UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FOUR STAR BEAUTY SUPPLY CORP.,

        Plaintiff,

  v.                                        Case No. 16-C-1351

GIB, LLC,

        Defendant.

---

## DECISION AND ORDER CONFIRMING ARBITRATION AWARD
## AND DENYING PETITION TO VACATE

---

This is an action to vacate an arbitration award resulting from a dispute that arose when Defendant GIB, LLC terminated a business relationship with Plaintiff Four Star Beauty Supply Corporation. Four Star commenced a civil action against GIB in Milwaukee County Circuit Court. GIB removed the action to federal court and subsequently filed a motion to enforce the award. This court has jurisdiction pursuant to 28 U.S.C. § 1332. The parties have filed cross motions for relief and the case is now fully briefed. For the reasons that follow, GIB's motion to confirm the arbitration award will be granted and Four Star's petition will be denied.

### BACKGROUND

GIB is a California limited liability company, and each of its members are California citizens. GIB manufactures "Brazilian Blowout" hair care products. In July 2010, Four Star began distributing the product in an exclusive territory that included Wisconsin, Michigan, Iowa, Minnesota, North Dakota, and South Dakota. Although the parties discussed entering into a distributorship agreement, GIB never signed the proposed form. The parties nevertheless continued

their arrangement until 2013, when GIB became dissatisfied with Four Star's sales and performance and terminated the sales relationship.

Four Star threatened to sue GIB for breach of the distributorship agreement, and in response, GIB filed a complaint in the Central District of California seeking a declaratory judgment that it was entitled to terminate the parties' at-will relationship. On April 16, 2014, the parties stipulated to dismiss the action and submit to arbitration. The parties participated in a three-day arbitration before the Honorable Justice John Zebrowski of ADR Services, Inc. On January 12, 2016, Justice Zebrowski issued a preliminary award, finding in GIB's favor on all issues. Six months later, he awarded GIB $95,882.50 in fees and $28,777.93 in costs, for a total award of $124,660.43.

## ANALYSIS

Four Star requests that the court vacate the arbitration award under the Wisconsin Arbitration Act (WAA), Wis. Stat. § 788.10, and the Federal Arbitration Act (FAA), 9 U.S.C. § 10. Four Star contends the award should be vacated for three reasons: (1) the arbitrator manifestly disregarded the law when he found that the parties did not share a community of interest under the Wisconsin Fair Dealership Law (WFDL); (2) the award violates public policy; (3) and the arbitrator manifestly disregarded the applicable law in awarding GIB attorneys' fees.

Both the WAA and FAA authorize a court to vacate an arbitration award in four, limited circumstances. *See* 9 U.S.C. § 10(a); Wis. Stat. § 788.10. While the language of the WAA and FAA are "virtually identical," *Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.*, 87 F.3d 96, 99 (7th Cir. 1996), court interpretation of the statutes vary in some respects. For instance, a court may vacate an arbitration award for "manifest disregard of the law" under the FAA only when the award "directs the parties to violate the legal rights of third persons who did not consent to the arbitration."

2

*Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 284 (7th Cir. 2011) (citing *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001)). In this case, Four Star asserts that the arbitrator manifestly disregarded the law, but it does not argue that the arbitrator's award directed the parties to violate the rights of any third parties. In addition, a party cannot assert a public policy challenge under the FAA. *Id.* (noting that the four ways to vacate an arbitration award enumerated in 9 U.S.C. § 10(a) are "exclusive" and "neither judges nor contracting parties can expand" them). In short, Four Star has not asserted a viable challenge to the arbitration award under the FAA. The court will therefore analyze Four Star's arguments under the WAA.

Judicial review of an arbitration award is extremely limited. *See Sands v. Menard, Inc.*, 2010 WI 96, ¶ 48, 328 Wis. 2d 647, 787 N.W.2d 384 (The court's "task is to ensure that the parties receive what they bargained for—the adjudication of their dispute via the arbitration process." (citations omitted)). The court begins with the presumption that the award is valid, and the plaintiff must show by clear and convincing evidence that it is not. *Wis. Dept. of Emp't Relations v. Wis. State Bld. Trades Negotiating Comm.*, 2003 WI App 178, ¶ 17, 266 Wis. 2d 512, 669 N.W.2d 499. Errors of fact or law are not enough; in order for an award to be overturned, the plaintiff must plainly establish that the arbitrator engaged in misconduct, the arbitrator manifestly disregarded the law, or the award itself is illegal or violates strong public policy. *Milwaukee Bd. of Sch. Dirs. v. Milwaukee Teachers' Ed. Ass'n*, 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980) (citation omitted). When a plaintiff argues that the arbitration award is a "manifest disregard of the law," it must establish that the arbitrator understood and correctly stated the law, but ignored it. *Cirilli v. Country Ins. & Fin. Servs.*, 347 Wis. 2d 481, ¶ 7, 347 Wis. 2d 481, 830 N.W.2d 234. "If these standards are not violated, the arbitrator's award must be confirmed, even if the reviewing court would have

reached a different conclusion." *Id.* (citing *Lukowski v. Danker*, 184 Wis. 2d 142, 151, 515 N.W.2d 883 (1994)). When applying the WAA, Wisconsin courts consider federal cases interpreting identical provisions of the FAA to be persuasive authority. *Marlow v. IDS Prop. Cas Ins. Co.*, 2012 WI App 51, ¶ 9, 340 Wis. 2d 594, 811 N.W.2d 894.

Four Star maintains that the award violates the WAA because the arbitrator "intentionally disregarded the clear and straight-forward test" established by the Wisconsin Supreme Court in *Ziegler Co. v. Rexnord, Inc.*, 139 Wis. 2d 593, 407 N.W.2d 873 (1987), in concluding that Four Star and GIB did not share a "community of interest" under the WFDL. ECF No. 10 at 1–2. It also argues that the award violates the clear public policy established by the WFDL. The WFDL governs "dealership" relationships, or those arrangements entered into between "grantors" and "dealers." Wis. Stat. § 135.025. The statute defines a "dealership" as any "contract or agreement, either express or implied, whether oral or written, between 2 or more persons, by which a person is granted the right to sell or distribute goods or services, . . . in which there is a 'community of interest' in the business of offering, selling or distributing goods or services . . . ." Wis. Stat. § 135.02(3)(a).

While Wis. Stat. § 135.02(1) states that "community of interest" means "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services," the Wisconsin Supreme Court has attempted to provide some guidance to understanding this "vague and unhelpful" term. *Frieburg Farm Equip., Inc. v. Van Dale, Inc.*, 978 F.2d 395, 398 (7th Cir. 1992). In *Ziegler*, the Wisconsin Supreme Court held that a community of interest exists only when the parties' relationship encompasses both a "continuing financial interest" and "interdependence," meaning "the degree to which the dealer and grantor cooperate, coordinate their activities and share common goals in their business relationship."

4

139 Wis. 2d at 604–05. It explained that these guideposts "require a person to demonstrate a stake in the relationship large enough to make the grantor's power to terminate, cancel or not renew a threat to the economic health of the person (thus giving the grantor inherently superior bargaining power)." *Id.* at 605.

The court also listed a number of "facets" of the business relationship courts should consider in determining whether a community of interests exists, such as "how long the parties have dealt with each other; the extent and nature of the obligations imposed on the parties in the contractor agreement between them; what percentage of time or revenue the alleged dealer devotes to the alleged grantor's products or services; what percentage of the gross proceeds or profits of the alleged dealer derives from the alleged grantor's products or services; the extent and nature of the alleged grantor's grant of territory to the alleged dealer; the extent and nature of the alleged dealer's uses of the alleged grantor's proprietary marks (such as trademarks or logos); the extent and nature of the alleged dealer's financial investment in inventory, facilities, and good will of the alleged dealership; the personnel which the alleged dealer devotes to the alleged dealership; how much the alleged dealer spends on advertising or promotional expenditures for the alleged grantor's products or services; the extent and nature of any supplementary services provided by the alleged dealer to consumers of the alleged grantor's products or services." *Id.* at 606. Although the court did not recite every factor that may be considered by a court, it noted these considerations are useful to a court's "community of interest" analysis.

The Seventh Circuit has summarized the inquiry even further in an attempt to provide clarity to a muddled area of law:

> [A] retailer is a dealer only if it has made the kind of investments that would tempt an unscrupulous grantor to engage in opportunistic behavior-in other words, to exploit the fear of termination that naturally attends a dealer's investment in grantor—specific assets. . . . At root, these are two ways of saying the same thing. A grantor can exploit a dealer's fear of termination (our words) only if termination will have severe economic consequences (their words). Severe economic consequences will attend termination (theirs) because the dealer will be unable to recover its sunk costs (ours). The ten *Ziegler I* factors structure any inquiry into these matters.

*Frieburg Farm*, 978 F.2d at 399 (internal citations omitted).

In this case, the arbitrator found that the WFDL did not apply to Four Star and GIB's business relationship because the parties did not have a community of interest. ECF No. 1-2 at 11. After considering the guideposts and facets discussed in *Ziegler*, the arbitrator concluded that the parties had a fundamental conflict of interest—different sales priorities—that prevented them from falling into the typical distributorship contemplated by the WFDL. *Id.* at 10. Implicit in the arbitrator's decision is the finding that Four Star did not have the kind of "sunk costs" in its arrangement with GIB that would have caused it to devote significant efforts to selling GIB products. Four Star makes no argument to the contrary in its petition to vacate.

Even apart from this, however, the fact that the arbitrator did not specifically discuss every facet or explain how he balanced each one does not equate to a "manifest disregard of the law." *See Affymax*, 660 F.3d at 285 ("No rule of law requires arbitrators to render opinions—or . . . to discuss every issue that the parties contested. Federal courts themselves often let issues pass in silence, and arbitration need not be as formal as litigation. Many an arbitration ends with an award saying who won but omitting reasons."). In short, the court cannot conclude that the arbitrator disregarded the law when he found that the parties did not have a community of interest. Because Four Star's public

6

policy challenge hinges on the success of its argument that the arbitrator manifestly disregarded the law as to his application of the WFDL, this argument fails as well.

Next, Four Star asserts that the award violates the WAA because the arbitrator manifestly disregarded the applicable law in awarding GIB attorneys' fees. In his decision, the arbitrator noted that, after reviewing the parties' briefing on the issue, he found GIB had established its right to an award of attorneys' fees and costs. ECF No. 1-2 at 11. As to the amount of fees, the arbitrator determined that the rates were reasonable with respect to the type of work involved in the relevant geographic areas, and in some instances were low due to the discounted rates GIB received; the time consumed was reasonably necessary based on the amount claimed, the several theories advanced, the complexity of the law involved, the volume of the evidentiary record, the length of the evidentiary hearing, and other similarly relevant factors; and the costs were reasonably necessary and were not excessive under the circumstances. *Id.* at 12. Though the arbitrator's decision does not contain an exhaustive discussion regarding the fee award, he was not required to explain his award in greater detail. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 564 (7th Cir. 2008).

Moreover, the award is in line with the applicable law. Four Star contends that in awarding fees and costs to GIB, the arbitrator disregarded Wis. Stat. § 135.06, which provides that only a prevailing plaintiff may recover attorneys' fees, not a prevailing defendant. Yet, the contract Four Star attempted to enforce was governed by California law, and the arbitrator applied California law to determine the contract's validity. ECF No. 1-2 at 5. It follows that the arbitrator applied California law in determining whether to award GIB attorneys' fees. California law provides that when a party attempts to enforce a contract with a fee-shifting provision, the prevailing party is

7

entitled to fees, even if it successfully argues that the contract is invalid. *See* Cal. Civ. Code § 1717; *see also Santisas v. Goodin*, 951 P.2d 399, 406 (Cal. 1998) ("Section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, . . . when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.'" (quoting *N. Assocs. v. Bell*, 184 Cal. App. 3d 860, 865 (1986))). Four Star has not shown that the arbitrator manifestly disregarded California law in awarding attorneys' fees to GIB. Therefore, the award will not be overturned.

## CONCLUSION

Accordingly, for the reasons set forth above, Four Star's petition to vacate the award is **DENIED** and GIB's motion to confirm the award (ECF No. 3) is **GRANTED**. The Clerk is directed to enter judgment confirming the arbitration award dismissing Four Star's claim against GIB and awarding GIB a total of $124,660.43 in arbitration fees and costs against Four Star, together with statutory costs of this action.

Dated this   28th   day of December, 2017.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court